CITY OF BUFFALO, Plaintiff, *v.* EDMUND P. COTTLE, Defendant.

City Court of Buffalo, May 17, 1937.

*Gregory U. Harmon, Corporation Counsel [Edward J. Ruehl* of counsel], for the plaintiff.

*Edmund P. Cottle,* for the defendant.

Summers, J. The city comes asking the court to award it a penalty against the defendant for the violation of a municipal ordinance, the gist of the offense being that the defendant is permitting to remain, on premises owned by him, the relic of a once proud dwelling house, now so far advanced in decrepitude as to be pregnant with divers dangers to the vicinage.

The problem involved here arises often in our city and seems to warrant an examination.

The defendant admits the tottering condition of his house. In fact the pictures in evidence portray a scene of Belgium-like devastation, made familiar during the Great War.

The defendant tells how this came about, thus:

Up to 1932, the house so well performed its social function as a shelter, that it commanded a rental of ninety dollars a month. The tenant about that time departed, and the house became vacant. And from this hour on, this vacancy approached, closer and closer, to a vacuum; bit by bit disintegration progressed, doors vanished, window sashes disappeared, bath tubs, despite their cumbersome nature, melted, seemingly, into the circumambient air. Though the police were repeatedly notified, no gang killing or " bookie " operation ever more completely baffled them. All the modern ultra-scientific paraphernalia of crime detection proved futile in revealing the reason for, or prevented the disappearance of, so seemingly stable a thing as this house. A student of the psychic might well find sustenance for his belief in the occult powers of ghostly denizens of vacant houses, while a highland Kelt might lay it to malicious fairies; but to a student of the prosaic, however, it seems a perfect example of police phlegmatism.

Losses of this nature suffered by landlords, predicated on police indifference, probably exceed the combined depredations from all other forms of crime in the community, and the most mysterious thing of all is that it is suffered, as one of the unavoidable slings and arrows of outrageous fortune, by our patient taxpayers.

The city, in taking over the conduct of a department of police, has assumed what has always been the prime duty of government, *the protection of property.* While the multiplicity of duties undertaken by the city may explain the diversion of the police from ts chief purpose, it can in nowise divest it of its duty in the cir-

cumstance. One is reminded here of the story of the housewife so interested in her extra mural efforts to save the nation, that neither the children nor the dishes were ever washed at home.

Certainly the city, having created a condition by the neglect of its own police department, cannot be allowed to recover for the result of its own obvious shortcomings.

Let the proceedings be dismissed.